Opinion Issued July 10, 2003                                                      
















In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00648-CR




LAWRENCE RODRIGUEZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 183rd District Court 
Harris County, Texas
Trial Court Cause No. 892791




MEMORANDUM OPINION
          A jury convicted appellant, Lawrence Rodriguez, of aggravated robbery and
assessed punishment at 25 years’ confinement. See Tex. Pen. Code Ann. § 29.03
(Vernon 2003). We determine (1) whether the evidence was legally and factually
sufficient to show that appellant used a deadly weapon, (2) whether appellant’s trial
counsel provided ineffective assistance due to allegedly deficient representation at the
guilt/innocence stage, and (3) whether the trial court erred in entering a deadly-weapon affirmative finding in the judgment. We affirm.
Facts
          Lana Novack worked as a cashier at a Texaco station. One day around noon,
a white male, later identified as Albert Hollaway, entered the store, walked to the
counter, and announced, “this is a robbery.” Novack saw that Hollaway had in his
hand what appeared to be a knife with a black handle, and she was afraid that he
would hurt her. Hollaway again announced “this is a robbery,” and Novack backed
away from the counter and started screaming. 
          After Hollaway started to jump on top of the counter, Novack ran to a nearby
door. Before she exited, Novack saw that Hollaway had jumped on top of the counter
and had started to remove the cash register. Novack’s screams alerted an off-duty
Harris County deputy, who was in a car in the station’s parking lot. 
          Hollaway left the store, carrying the cash register, and ran toward a white van
parked in an adjacent lot. Appellant was the driver of the van. The deputy pointed
his gun at Hollaway and yelled at him to stop, but Hollaway got into the van on the
passenger side. Appellant then drove out of the parking lot at a high rate of speed. 
Another deputy sheriff and a deputy constable located the van, activated their
emergency sirens, and pursued it for about a mile into a strip-center parking lot. 
          Three men, including appellant and Hollaway, got out of the van and began to
flee on foot. The unidentified third man was arrested near the van. The deputies then
located Hollaway, arrested him, and found in his possession the cash register and a
knife with a black handle. Appellant was found crouching behind a clothing rack in
a nearby store.
Legal and Factual Sufficiency
          In his first and second points of error, appellant contends that the evidence is
legally and factually insufficient to show that he was a party to the use of a deadly
weapon during the robbery.


 Appellant complains that, other than Novack’s
testimony regarding the color of the knife, the record contains no description of the
size and shape of the knife and that there was no evidence that Hollaway used or
attempted to use the knife as a deadly weapon. 
          When conducting a legal-sufficiency review, we view the evidence in the light
most favorable to the verdict and ask whether a rational trier of fact could find the
essential elements of the crime beyond a reasonable doubt. King v. State, 29 S.W.3d
556, 562 (Tex. Crim. App. 2000); Valencia v. State, 51 S.W.3d 418, 423 (Tex.
App.—Houston [1st Dist.] 2001, pet. ref’d). The fact finder may reasonably infer
facts from the evidence before it, credit the witnesses if it cares to, disbelieve any or
all of the testimony proffered, and weigh the evidence in the manner it chooses. 
Bruno v. State, 922 S.W.2d 292, 293 (Tex. App.—Amarillo 1996, no pet.).
          When conducting a factual-sufficiency review, we examine all the evidence
neutrally and ask whether proof of guilt is so obviously weak or greatly outweighed
by contrary proof as to indicate that a manifest injustice has occurred. King, 29
S.W.3d at 563; Valencia, 51 S.W.3d at 423. If there is probative evidence supporting
the verdict, we must avoid substituting our judgment for that of the trier of fact, even
when we disagree with the fact finder’s determination. King, 29 S.W.3d at 563. The
trier of fact is the sole judge of the weight and credibility of the witness testimony. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). 
          A knife is not a deadly weapon per se. Thomas v. State, 821 S.W.2d 616, 620
(Tex. Crim. App. 1991); Victor v. State, 874 S.W.2d 748, 751 (Tex. App.—Houston
[1st Dist.] 1994, pet. ref’d). The State may show a knife to be a deadly weapon by its
capacity to cause serious bodily injury or death. Hawkins v. State, 605 S.W.2d 586,
588 (Tex. Crim. App. 1980); Davidson v. State, 602 S.W.2d 272, 273 (Tex. Crim.
App. 1980). When, as here, the knife inflicted no wounds, its capacity to cause
serious bodily injury or death may be shown by factors such as the manner of its use,
size or sharpness of the blade, the use of any brandishing motions, threats made by
the accused, the victim’s fear of serious bodily injury or death, or the physical
proximity of the accused and the victim. See Victor, 874 S.W.2d at 751; Hicks v.
State, 837 S.W.2d 686, 690 (Tex. App.—Houston [1st Dist.] 1992, no pet.). 
          The deputies found a lock-bladed knife with a black handle on Hollaway after
they arrested him. Novack testified that the knife found on Hollaway was “very
similar” to the knife that Hollaway had used during the robbery, although she could
not testify that it was the same knife. The blade of the knife, which was admitted into
evidence, is 2.25 inches long, is one inch wide at its base, is serrated, and has a sharp
tip. The knife has a black handle. Thus, because the knife found on Hollaway was
admitted into evidence, there was no need for testimony about the size and shape of
the knife, as appellant contends on appeal. 
          Novack testified that, during the robbery, she was standing behind the counter
and that Hollaway approached her and stated,“This is a robbery.” Hollaway initially
stood on the other side of the counter, facing Novack, but then he produced a knife
and jumped on top of the counter in the direction of Novack. 
 
          A security videotape was admitted into evidence at trial. It shows that, while
on top of the counter, Holloway pointed the knife at Novack, who was only one or
two feet away. Hollaway’s jumping on top of the counter, the only barrier that
separated him from Novack, and pointing the knife at Novack were implicitly
threatening actions. Novack testified that, after Holloway jumped onto the counter,
she backed away from the counter and started screaming, “No, no, no,” believing that
he was going to attack her. Novack also testified that she was afraid and that she
believed that Hollaway might “harm [her] in very much of a way” or might even kill
her. Appellant presented no evidence indicating that the knife was not a deadly
weapon. 
          We hold that the evidence is legally and factually sufficient to show that the
knife used during the robbery was a deadly weapon.
          We overrule appellant’s first and second points of error.
Ineffective Assistance of Counsel
          In his third point of error, appellant contends that his trial counsel provided
ineffective assistance. Appellant complains that his trial counsel improperly 
questioned him about his “inadmissible prior convictions” on direct examination and
also failed to do the following: to admonish him about the consequences of testifying;
to object to questions about his prior convictions on cross-examination; to seek
limiting instructions; and to object to the State’s final argument.
          To determine if a defendant has been denied effective assistance of counsel, we
follow the standard set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.
Ct. 2052, 2064 (1984). First, appellant must demonstrate that counsel’s
representation fell below an objective standard of reasonableness under prevailing
professional norms. Howland v. State, 966 S.W.2d 98, 104 (Tex. App.—Houston [1st
Dist.] 1998), aff’d, 990 S.W.2d 274 (Tex. Crim. App. 1999). Second, appellant must
establish that counsel’s performance was so prejudicial that it deprived him of a fair
trial. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Howland, 966 S.W.2d at 104. 
Thus, appellant must show that a reasonable probability exists that, but for counsel’s
unprofessional errors, the result of the proceeding would have been different. 
Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Howland, 966 S.W.2d at 104. 
Appellant has the burden to establish both of these prongs by a preponderance of the
evidence. Jackson v. State, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998); Davis v.
State, 830 S.W.2d 762, 765 (Tex. App.—Houston [1st Dist.] 1992, pet. ref’d).
          An appellant making a claim of ineffective assistance of counsel must identify
the acts or omissions of counsel that are alleged not to have been the result of
reasonable, professional judgment. Strickland, 466 U.S. at 690; 104 S.Ct. at 2066. 
“Any allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.” Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).
A.      Failure to Inform Appellant about Consequences of Testifying and to
Prepare Appellant for Cross-Examination

          Appellant first complains that his trial counsel provided ineffective assistance 
because she did not inform appellant about the consequences of testifying and failed 
to prepare him adequately for cross-examination by the State. 
          Immediately before appellant testified and outside the presence of the jury,
appellant’s trial counsel questioned appellant to show that she had previously
admonished appellant about his decision to testify:
Trial counsel:And I have told you, consulted with you, not only
here this evening, but in the holdover cells and in
my visits to the jail, that you could testify if you
want to on your own behalf, but that you don’t have
to, right?
 
Appellant:Right.
 
Trial counsel:And I have also gone over on more than one
occasion the pros and the cons, meaning the good
things and the bad things that could happen if you
decide to testify and the things that could happen if
you decide not to testify?
 
Appellant:Yes, you have.
 
Trial counsel:And do you understand that if you decide to testify
that certain things that have not been brought out in
the trial, say, things about your criminal history, that
have not been brought out, would be brought out if
you took the witness stand.
 
Appellant:Right. 
Trial counsel:And that you would be subject to cross-examination
by the State of Texas?
 
Appellant:Right.
 
Trial counsel:And understanding all of that, and the pros and the
cons, and the pitfalls of testifying on your own
behalf, you have decided that that’s what you want
to do?
 
Appellant:Yes, I do.
 
Trial counsel:Okay. And that’s your decision?
 
Appellant:Yes, I do.
Although the record does not reflect what appellant’s trial counsel told appellant
during her previous visits to the holdover cells and in jail, appellant admitted that, on
previous occasions, his trial counsel had informed him of the consequences of
testifying and about the possibility of cross-examination and impeachment with
regard to his criminal history. Appellant’s trial counsel also reiterated the potential
consequences while questioning him prior to his testifying. Thus, the record indicates
that appellant knowingly and voluntarily chose to testify after having heard about the
potential consequences associated with taking the stand. See Cooper v. State, 769
S.W.2d 301, 305 (Tex. App.—Houston [1st Dist.] 1989, pet. ref’d). 
          With regard to appellant’s complaint that trial counsel failed to prepare him
adequately for cross-examination, we will not speculate whether appellant’s trial
counsel was ineffective because the record is silent on whether and how counsel
prepared appellant. See McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App.
1996) (holding that claim of ineffective assistance of counsel must be firmly
supported by record). 
B.      Introduction of and Failure to Object to Prior Conviction Evidence 
          Appellant next complains that his trial counsel provided ineffective assistance
in questioning him on direct examination about his remote prior convictions and in
failing to object to the State’s questioning of him about these prior convictions during
cross-examination. 
          Prior to trial, appellant’s trial counsel requested that the State give notice of its
intent to use evidence of prior convictions, and the State filed notice that it intended
to present evidence of appellant’s 10 prior convictions. Appellant also filed a motion
in limine, which the trial court granted, requesting that the State refrain from
questioning appellant about his prior convictions until the court determined the
admissibility of these prior convictions outside the presence of the jury. During direct
examination, appellant’s trial counsel questioned him about one of his prior
convictions for robbery, which conviction was 11 years old:
Trial counsel:I believe it’s about 12 years ago you had a felony
conviction out of Harris County; is that right?
 
Appellant:That’s correct.
 
Trial counsel:And you went to prison on a robbery case, 12 years
ago—or more than 12 years ago. Do you remember
exactly when it was?
 
Appellant:It was exactly in 1990 of September [sic], I did do
that. And I did call the—I told my sister what I had
done and she advised me to turn myself in to the
HPD.

. . . 
 
Trial counsel:You turned yourself in. And did you plead guilty to
that?
 
Appellant:Yes, I was guilty.
 
Trial counsel:And that was back in 1991, you were sent to prison
and you did your time on that?
 
Appellant:Yes, ma’am.
 
Trial counsel:Why aren’t you pleading guilty to this one?
 
Appellant:Because I’m not guilty.

On cross-examination, the State elicited testimony from appellant that he had been
convicted for misdemeanor theft in 2001, two robberies in 1991, promoting
prostitution in 1990, theft in 1984, and theft in 1982. During cross-examination
regarding the prior robbery convictions, appellant admitted his guilt, not only to the
two robberies to which he had pleaded guilty in 1991, but also to two other robberies 
with which he had never been charged. Appellant’s trial counsel did not object to this
questioning. 
          Here, the State had already stated its intent to present evidence of appellant’s
prior convictions. Trial counsel elicited from appellant an admission that he was
guilty of one prior robbery and then elicited from appellant his assertion that he was
not guilty of the current robbery offense. Thus, the contrasting of appellant’s
admission of guilt of the prior robbery with appellant’s assertion of innocence of the
current offense appears to have been a matter of trial strategy. The strategy appears
to have included allowing in both robberies for which appellant had entered pleas of
guilty in 1991 and of which appellant admitted on cross-examination that he was
guilty. 
          However, there is also a question as to whether appellant’s prior convictions
were too remote to have been admissible under Texas Rule of Evidence 609(b). See
Tex. R. Evid. 609(b). Rule 609(b) provides that evidence of a remote prior
conviction is inadmissible if more than 10 years have elapsed since the date of the
conviction or the witness’s release from confinement, whichever is later. See id. If
the remote convictions were inadmissible under Rule 609(b), then appellant’s trial
counsel could have had no reasonable trial strategy for failing to object to the
admission of these convictions during cross-examination. 
          Appellant was sentenced to 15 years’ confinement for the 1991 robbery
conviction, although the record does not reflect the date on which appellant was
released from confinement.


 Even if appellant had served only one-fifth of his
sentence—or three years—his conviction would not be remote under Rule 609(b). 
See id. 
          We reach the same conclusion if we consider only the dates of each conviction
offered. See Morris v. State, 67 S.W.3d 257, 263 (Tex. App.—Houston [1st Dist.]
2001, pet. ref’d). All of appellant’s prior convictions were for felony offenses and
were rendered more than 10 years before trial, except for appellant’s 2001 conviction
for misdemeanor theft. A misdemeanor theft conviction is a crime involving moral
turpitude, and, therefore, it can be “tacked onto” remote convictions and cause them
to be treated as not remote under Rule 609(a). See Hernandez v. State, 976 S.W.2d
753, 756 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d) (holding that appellate
court may find that, although prior conviction is more than 10 years old, later
convictions for felonies or misdemeanors involving moral turpitude remove taint of
remoteness from prior convictions). Therefore, the remoteness alone of appellant’s
prior convictions would not have made them inadmissible.
          In determining whether appellant’s trial counsel provided ineffective
assistance, we must also consider whether the probative value of these convictions
outweighed any prejudicial effect under Rule 609(a). Id. Theus v. State dictates that
we should consider (1) the impeachment value of the prior crimes offered, (2) the
temporal proximity of the past crimes relative to the charged offense, (3) the
similarity between the past crime and the offense being prosecuted, (4) the
importance of the defendant’s testimony, and (5) the importance of the credibility
issue. See id., 845 S.W.2d 874, 880 (Tex. Crim. App. 1992). 
          The impeachment value of the prior convictions offered is proportional to the
extent to which the crime involved deception. Id. at 881. The State elicited evidence
that appellant had been convicted of two robberies, two felony thefts, one
misdemeanor theft, and one offense of promoting prostitution. Appellant’s prior
convictions for theft are crimes involving deception. See Jackson v. State, 11 S.W.3d
336, 340 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d). Although robbery
contains theft or attempted theft as an element, it is unclear whether appellant’s
convictions for robbery and promoting prostitution relate to his propensity for
deception. See Simpson v. State, 886 S.W.2d 449, 452 (Tex. App.—Houston [1st
Dist.] 1994, pet. ref’d) (holding that, although robbery involves threat or use of
violence, it is not clear whether robbery involves element of deception). This factor
favors admissibility for the three theft convictions, but does not favor admissibility
for the robbery and promotion-of-prostitution convictions. 
 
          Temporal proximity favors admissibility if the past crimes are recent and the
witness has demonstrated a propensity for running afoul of the law. Theus, 845
S.W.2d at 881. Appellant had been recently convicted of misdemeanor theft in 2001. 
Appellant’s other convictions were more than 10 years old. However, appellant’s
record includes 10 total prior convictions and demonstrates that appellant has a
propensity for, and a history of, running afoul of the law. See Jackson, 11 S.W.3d at
340. This factor—temporal proximity—weighs toward admissibility of the prior
convictions. 
          The next factor we consider is similarity of the past convictions. See Theus,
845 S.W.2d at 880. Similarity between the past crime and the current crime militates
against admissibility, whereas dissimilarity between the past crime and the current
charge favors admissibility. See id. at 881. Four of the six prior convictions
presented at trial were not similar. Two of appellant’s prior convictions were for
robbery, a crime similar to the crime for which appellant was charged. For two of the
prior crimes, the third factor weighs against admissibility, but for the other four, it
weighs in favor of admissibility.  
          Finally, we look at the importance of appellant’s testimony and the importance
of his credibility. See Theus, 845 S.W.2d at 880. Appellant was driving the
“getaway” van in which Hollaway fled after the robbery. Appellant claimed that he
did not know that Hollaway had planned to rob the Texaco station or, after he and
Hollaway drove away from the store, that Hollaway had actually robbed the store. 
Therefore, appellant’s credibility was an issue of great importance. The State’s need
to impeach appellant’s credibility was also great. We note, however, that the State
could have relied on appellant’s three prior theft convictions to impeach him, rather
than presenting evidence of appellant’s two prior robbery convictions, which
involved the threat or use of violence and were, therefore, prejudicial. See Simpson,
886 S.W.2d at 452. Thus, the final two Theus factors could weigh against
admissibility, at least with regard to appellant’s prior robbery convictions and his
promotion-of-prostitution conviction. However, as noted above, the contrasting of
appellant’s admission of guilt of the prior robberies with his assertion of innocence
in this case could have been sound trial strategy.
           An analysis under the Theus factors shows that the prior theft convictions were
admissible and that the prior conviction for promotion of prostitution might have
been admissible. Therefore, because it also appears to have been appellant’s strategy
to admit the prior robberies, we are unable to say that counsel’s assistance was
deficient or that appellant has shown that the result of the proceeding would have
been different.


 See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Howland, 966
S.W.2d at 104. We thus hold that counsel’s performance did not fall below the
“objective standard of reasonableness under prevailing professional norms” and was
not so prejudicial that it deprived appellant of a fair trial. Ex parte Menchaca, 854
S.W.2d 128, 132 (Tex. Crim. App. 1993); Howland, 966 S.W.2d at 104.  
C.      Failure to Seek Limiting Instruction 
          Appellant also complains that his trial counsel provided ineffective assistance
in failing to request a limiting instruction relating to his prior convictions. However,
the record shows that the trial court’s charge included the following limiting
instruction:
You are instructed that certain evidence was admitted before you in
regard to the defendant’s having been charged and convicted of an
offense or offenses other than the one for which he is now on trial. Such
evidence cannot be considered by you against the defendant as any
evidence of guilt in this case. Said evidence was admitted before you
for the purpose of aiding you, if it does aid you, in passing upon the
weight you will give his testimony, and you will not consider the same
for any other purpose.
Therefore, even if trial counsel erred in failing to request a limiting instruction,
appellant cannot show that the result of the proceeding would have been different. 
See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Howland, 966 S.W.2d at 104.
D.      Failure to Object to Improper Argument by State
          Finally, appellant argues that his counsel provided ineffective assistance by
failing to object to the State’s closing argument. Specifically, appellant complains
that the State’s argument was improper because the State repeatedly referred to
appellant’s prior convictions and because the State made remarks during final
argument that appellant was a “four time robber,” a “pimp,” and a “robber.” 
          The four general areas of permissible jury arguments are (1) summation of the
evidence, (2) reasonable deductions from the evidence, (3) answers to argument of
opposing counsel, and (4) pleas for law enforcement. Albiar v. State, 739 S.W.2d
360, 362 (Tex. Crim. App. 1987); Gonzales v. State, 807 S.W.2d 830, 835 (Tex.
App.—Houston [1st Dist.] 1991, pet. ref’d). 
          Because appellant admitted at trial that he had committed four robberies and
had been convicted of promotion of prostitution, the State’s argument fell within the
permissible bound of proper argument as summation of the evidence and reasonable
deductions from evidence. See Gonzales, 807 S.W.2d at 835.
          We overrule appellant’s third point of error.
Deadly-Weapon Affirmative Finding
          In his fourth point of error, appellant contends that the trial court erred in
entering a deadly-weapon affirmative finding in the judgment. Appellant argues that,
in the absence of a specific deadly-weapon finding or special issue submission to the
jury, it is “impossible to tell whether the jury convicted appellant as a party or as a
principal.”  
 
          Here, the indictment alleged that appellant did “use and exhibit a deadly
weapon, to wit: a knife.” The trial court instructed the jury on the law of parties in
its charge. The jury’s verdict read “guilty of aggravated robbery, as charged in the
indictment.” The trial court entered the affirmative finding of a deadly weapon in the
judgment by circling “Yes” on a pre-printed form. The form judgment did not
provide a space for an entry indicating that appellant was convicted as a party and
that the affirmative finding was based on appellant’s knowledge that a deadly weapon
would be used or exhibited during the robbery. In a jury trial, a trial court is required to enter a deadly-weapon affirmative
finding when (1) the jury has found guilt as alleged in the indictment and the deadly
weapon has been specifically pled in the indictment; (2) the jury has found the
defendant guilty as alleged in the indictment, and, though not specifically pleaded as
a deadly weapon, the weapon pled is per se a deadly weapon; or (3) the jury
affirmatively answered a special issue on deadly-weapon use. See Vasquez v. State,
56 S.W.3d 46, 47 (Tex. Crim. App. 2001). Once the jury makes the affirmative
finding, the trial court must enter the affirmative finding in the judgment. See
Johnson v. State, 6 S.W.3d 709, 714 (Tex. App.—Houston [1st Dist.] 1999, pet.
ref’d). 
 
          Appellant cites Mulanax v. State


 and Pritchett v. State


 for the proposition
that, when the jury is instructed on the law of parties, an affirmative finding must be
entered in the judgment showing that the defendant used or exhibited the deadly
weapon or that the defendant knew that a deadly weapon would be used or exhibited. 
However, these two cases were overruled by the Fourteenth Court of Appeals in
Sarmiento v. State. See id., 93 S.W.3d 566, 570 (Tex. App.—Houston [14th Dist.] 
2002, pet. ref’d) (holding that, when use of deadly weapon is an element of offense,
State automatically carries burden of proving defendant knew that deadly weapon
would be used or exhibited in commission of offense, whether as party or principal). 
Sarmiento disposes of appellant’s arguments. 
          Moreover, in Johnson, we held that, by finding a defendant guilty as alleged
in the indictment, which charged the defendant with the commission of aggravated
robbery with a deadly weapon, the jury “necessarily found that appellant knew a
deadly weapon would be used” or exhibited. See id., 6 S.W.3d at 714. Article 42.12
of the Texas Code of Criminal Procedure allows entry of an affirmative deadly-weapon finding in a judgment if a defendant knew that the weapon would be used or
exhibited. Tex. Code Crim. Proc. Ann. art. 42.12 (Vernon Supp. 2003). 
Accordingly, we hold that the trial court did not err in entering a deadly-weapon
affirmative finding in the judgment.
          We overrule appellant’s fourth point of error.
Conclusion
          We affirm the judgment of the trial court.
 
 
 Tim Taft
     Justice

Panel consists of Justices Taft, Jennings, and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).